FILED
2006 DEC -4 PM 3:58
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| PAULSSON GEOPHYSICAL SERVICES, INC., Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. A06CA952 LY |
| AXEL M. SIGMAR; RESERVOIR SYSTEMS, INC.; SIGMA RESEARCH, INC. and RESERVOIR SYSTEMS INTERNACIONAL, S.A. DE C.V., Defendants. | § | |

**PAULSSON GEOPHYSICAL SERVICES, INC.'S VERIFIED ORIGINAL COMPLAINT FOR TRADEMARK INFRINGEMENT, DILUTION, UNFAIR COMPETITION, AND BREACH OF CONTRACT**

Plaintiff Paulsson Geophysical Services, Inc. ("P/GSI") asserts claims against Defendants Axel M. Sigmar ("Sigmar"), Reservoir Systems, Inc. ("RSI"), Sigma Research, Inc. ("SRI"), and Reservoir Systems Internacional, S.A. de C.V. ("RSM" and, collectively with Sigmar, RSI, and SRI, "Defendants") as follows:

**The Parties and the Jurisdiction and Venue of this Court**

1. Plaintiff P/GSI is a California corporation with its headquarters located in Brea, California. P/GSI provides seismic imaging services to the oil and gas exploration and production industry. P/GSI holds patents relating to the acquisition of seismic data and the deployment of large three-component, clamped receiver arrays and has developed and manufactured proprietary equipment to permit it to practice its patents. P/GSI markets its three-dimensional vertical seismic profile services under the registered service mark MASSIVE 3D VSP®. Both P/GSI® and MASSIVE 3D VSP® are registered in the United States, and

applications for "MASSIVE 3D VSP" are currently pending in Mexico, the United Kingdom, and the European Union.

2. On information and belief, Axel M. Sigmar is an individual who is a resident of the State of Texas who resides at 6311 Lohman Ford Road, Lago Vista, Texas 78645. On information and belief, this Court has personal jurisdiction over Defendant Axel M. Sigmar because he has conducted business within this State within the meaning of Section 17.042 of the Texas Civil Practice & Remedies Code. Axel M. Sigmar may be served by hand at 6311 Lohman Ford Road, Lago Vista, Texas 78645.

3. On information and belief, Reservoir Systems, Inc. is a corporation organized under the laws of the State of Texas having its principal place of business at 6311 Lohman Ford Road, Lago Vista, Texas 78645. Reservoir Systems, Inc. may be served by and through its registered agent Axel M. Sigmar at 6311 Lohman Ford Road, Lago Vista, Texas 78645.

4. On information and belief, Sigma Research, Inc. is a corporation organized under the laws of the State of Nevada having its principal place of business at 6311 Lohman Ford Road, Lago Vista, Texas 78645. Sigma Research, Inc. may be served by and through its registered agent Axel M. Sigmar at 6311 Lohman Ford Road, Lago Vista, Texas 78645.

5. Defendant Reservoir Systems Internacional S.A. de C.V., is a Mexican entity. Axel M. Sigmar is the President and CEO of Reservoir Systems Internacional, S.A. de C.V. This Defendant may be served in accordance with Federal Rule of Civil Procedure 4(h)(1), by hand delivery to Axel M. Sigmar at 6311 Lohman Ford Road, Lago Vista, Texas 78645.

6. This action arises under the Trademark Laws of the United States, 15 U.S.C. § 1051 *et seq.*, respectively, and under Texas state law.

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), 1338(b), and 1367.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. On information and belief, Sigmar, RSI, SRI and RSM have engaged in the trademark infringement and/or trademark dilution complained of below in this judicial district, a substantial part of the events or omissions giving rise to P/GSI's claims occurred in this district, Sigmar resides in the district, and RSI's and SRI's principal offices are in this district.

**Summary of the Case**

9. P/GSI provides state-of-the-art oil and gas reservoir characterization services. It maintains a substantial competitive advantage in its field through its patented seismic exploration technology practiced with proprietary seismic receiver cable arrays and closely-guarded trade secrets. This case arises out of the Defendants' unauthorized and unlawful use of the registered service mark for P/GSI's vertical seismic profile technology, MASSIVE 3D VSP®.

10. Axel Sigmar is a businessman with many years of experience in the energy industry. In 2000, P/GSI and Mr. Sigmar began to discuss the possibility of a cooperative business venture. To facilitate discussions, P/GSI disclosed confidential and proprietary information to Mr. Sigmar and his company, SRI, pursuant to mutual nondisclosure agreements executed by Mr. Sigmar in March 2000 and SRI in March 2004. The parties did not reach an agreement regarding a business venture at that time, but in March 2005 P/GSI granted Mr. Sigmar's company, RSI, authority to promote P/GSI's MASSIVE 3D VSP® services in Mexico.

11. After receiving limited authority to promote P/GSI's services, Mr. Sigmar, acting through his Mexican company RSM, contracted with Petroleos Mexicanos ("Pemex"), Mexico's national oil company, to deliver P/GSI's MASSIVE 3D VSP® services. In order to secure the

contract, Defendants represented to Pemex that they had the exclusive rights to sell, use, and deliver P/GSI's services. In furtherance of this misrepresentation, RSI then purported to assign rights to provide the MASSIVE 3D VSP® services to RSM. Defendants even went so far as to deliver copies of the patents for P/GSI's technology to Pemex, representing that they had the right to use such technology.

12. In an attempt to secure $30 million in debt financing for the Pemex project, Defendants falsely represented to a U.S. lender that RSI had exclusive rights to deliver P/GSI's MASSIVE 3D VSP® services in Mexico.

13. Because Defendants do not have *any* right to deliver MASSIVE 3D VSP® services in *any* country, Defendants cannot possibly deliver the services promised in the Pemex contract. In fact, Defendants are now poised to perform services for Pemex, to the extent possible, with non-P/GSI equipment and technology which, to P/GSI's knowledge, have never been used to produce three-dimensional vertical seismic profiles.

14. In short, Defendants secured a contract with Pemex by offering P/GSI's proprietary MASSIVE 3D VSP® system. Defendants now plan to perform the contract with a different system that will not deliver MASSIVE 3D VSP® results while still representing that—as called for in the contract—they are providing P/GSI's MASSIVE 3D VSP® services. Defendants thus plan to pass off another product under P/GSI's registered service marks.

15. In the course of attempting to pass off as P/GSI's services those of Defendants, Defendants have already caused considerable harm to P/GSI. To begin with, Defendants have negotiated a completely untenable contract with Pemex, containing insufficient transfer of risk provisions, a complete absence of protection of P/GSI's confidential information, an unacceptable pricing system, and a description of work to be performed that is impossible to

perform. The contract does not allow for subcontracting to P/GSI or assignment to P/GSI. so P/GSi cannot merely take over the project – an extensive renegotiation would have to take place, and Pemex's willingness to undertake such a negotiation is uncertain. Finally, even if the contract could be re-worked, there is a substantial possibility that Defendants' actions have set expectations at Pemex that cannot be met: the contract's term is already half over and no performance has occurred. In all likelihood, the contract now represents approximately half of its initial value, representing a potential loss to P/GSI of as much as $14,536,507.16 , as this was work that – had Defendants not attempted to appropriate the opportunity to themselves via false advertising and unfair practices – P/GSI likely could have performed to Pemex's satisfaction.

16. Defendants' unauthorized use of P/GSI's service mark constitutes trademark infringement, unfair competition, and dilution under the Lanham Act and Texas law, misappropriation of trade secrets under Texas law, and breach of contract under Texas law. If Defendants attempt to perform under the Pemex contract, P/GSI's registered marks will suffer further irreparable harm because Pemex and other potential customers will draw false conclusions about the capabilities of the MASSIVE 3D VSP® system. Therefore, Plaintiff finds it necessary to file this Complaint and, concurrently, seek injunctive relief from the Court.

## Factual Background

17. P/GSI holds multiple patents relating to the acquisition of seismic data and the deployment of large three-component, clamped receiver arrays. (U.S. Patent Nos. 5,962,819; 6,206,133; 6,568,501 B2; 6923291).[1] Briefly, these patents cover the method of using a long cable with sensory devices attached to it that is inserted into a well or borehole to create very

[1] P/GSI also has patent applications pending or patents issued with the following countries or unions: Norway, Canada, European Union, Japan, Germany, France, United Kingdom.

detailed seismic surveys. This patented method utilizes cables with 80 sensory devices each, far more than the 40 sensory devices found on the second best cables in the industry. Further, P/GSI's method and proprietary knowledge allow up to five cables to be placed in the bore hole, for a total of up to 400 sensory devices. These sensory devices then receive data generated when seismic energy is introduced into the geological formations by the use of air guns, dynamite or a vibrating truck. The sensors transmit this data back to the surface, where it is collected and then processed into MASSIVE 3D VSP® surveys by P/GSI. The collection and interpretation of the data involves a significant amount of proprietary knowledge belonging only to P/GSI.

18. These patents give P/GSI a substantial competitive advantage in the field of borehole seismology. Practicing these patents with its proprietary equipment, P/GSI has performed the 10 largest three-dimensional vertical seismic profiles ("3D VSPs") ever recorded.

19. P/GSI markets its 3D VSP services under the registered service mark MASSIVE 3D VSP®. MASSIVE 3D VSP® is registered in the United States, and applications are currently pending in Mexico, the United Kingdom, and the European Union.

20. On March 7, 2000, P/GSI and Defendant Axel Sigmar entered into a Mutual Nondisclosure Agreement ("Sigmar NDA," attached as Exhibit A hereto) to facilitate the exchange of confidential information in order to allow the parties "to evaluate and negotiate a mutually acceptable and sustainable business relationship." Later, on March 21, 2004, Sigmar's U.S. company, SRI, also executed a similar NDA with P/GSI ("SRI NDA," attached as Exhibit B hereto).

21. Under these NDAs, P/GSI provided Sigmar and SRI with confidential information and trade secrets including technical data, equipment specifications, marketing

presentations, data processing workflows, sample proposals, sample price lists, and MASSIVE 3D VSP® equipment and crew requirements.

22. In early 2005, Sigmar informed P/GSI that he had established a relationship with Petroleos Mexicanos ("Pemex"), Mexico's national oil company, and that he believed he could convince Pemex to purchase P/GSI's MASSIVE 3D VSP® surveys.

23. P/GSI and Sigmar's other U.S. company, RSI, attempted to negotiate a contract under which RSI would be permitted to act as a general contractor and P/GSI would act as subcontractor in the provision of P/GSI's MASSIVE 3D VSP® surveys to Pemex.

24. The parties were unable to agree on the terms of such an agreement, and negotiations broke off in February 2005 with the understanding that they would attempt again to finalize an agreement if and when a Pemex contract became more than a hypothetical possibility.

25. In March 2005 Sigmar requested, and P/GSI granted to RSI, the authority to "promote" P/GSI's technology in Mexico.

26. P/GSI warned Sigmar that P/GSI is very particular about the terms of contracts under which it is willing to provide its services and that P/GSI must be involved in pre-survey investigation and planning before it will accept any contract to provide its services.

27. Although the grant of authority was limited to the right to "promote" P/GSI's services in Mexico, Sigmar represented to potential lenders in the U.S., to his Mexican partners in RSM, and to Pemex that RSI had the exclusive rights to practice P/GSI's patented technology and to deliver P/GSI's MASSIVE 3D VSP® services in Mexico.

28. Acting through RSI, Sigmar later assigned to RSM its purported rights to use and promote P/GSI's proprietary technologies in Mexico.

29. Sigmar proceeded to offer to provide to Pemex P/GSI's MASSIVE 3D VSP® services, which he admits require P/GSI's proprietary equipment and patented processes. Acting as president of RSM, Sigmar entered into a contract with Pemex to provide multiple MASSIVE 3D VSP® surveys for a total of nearly $29.5 million (USD) (the "Pemex Contract").

30. The Pemex Contract was obtained without competitive bids in a process called a "direct assignment." This direct assignment was made possible by the Mexican government's certification that P/GSI's MASSIVE 3D VSP® technology is unique, i.e., competitive bidding would be impossible because no competitor could offer the same or similar services.

31. Although the term "MASSIVE 3D VSP" appears 130 times in the Pemex Contract, in no case does the contract append the ® or ™ symbol to the service mark. "P/GSI" is mentioned 17 times in the agreement as a party that must certify members of the work crew, etc., but it is not designated as the owner of the MASSIVE 3D VSP® mark, nor is there any reference to P/GSI's ownership of the patented technology used in providing MASSIVE 3D VSP® services, nor is the term "P/GSI" noted as a trademark, which it is.

32. There is no question that the terms "MASSIVE 3D VSP" and "P/GSI," as used in the Pemex Contract, refer to a three-dimensional vertical seismic profile conducted with P/GSI's 80-level seismic receiver arrays and deployed in the manner described in P/GSI's patents. In short, the Pemex Contract calls for P/GSI's proprietary MASSIVE 3D VSP® services.

33. After securing the Pemex Contract, Mr. Sigmar called on P/GSI to perform its MASSIVE 3D VSP® services. Not having participated in the negotiation or drafting of the Pemex Contract, P/GSI was wary of the legal risks and obligations the Pemex Contract might impose. Accordingly, P/GSI asked to review the Pemex Contract. Mr. Sigmar refused to show

the Pemex Contract to P/GSI, instead demanding that P/GSI perform its services as a subcontractor.

34. Given Mr. Sigmar's refusal to deal openly with P/GSI, and given P/GSI's concern regarding undisclosed details of the Pemex Contract, P/GSI declined Mr. Sigmar's offer to work for RSM as a subcontractor. When it became clear that P/GSI would not perform as a subcontractor to RSM, Mr. Sigmar and his companies decided to perform without P/GSI. Defendants continued to represent to Pemex, however, that they would deliver P/GSI's MASSIVE 3D VSP® data acquisition services.

35. On September 20, 2006 P/GSI sent a letter to Axel Sigmar (i) clarifying that no commercial agreement for the delivery of P/GSI's MASSIVE 3D VSP® services has ever existed between P/GSI and any of the Defendants, and (ii) demanding return of all confidential information provided by P/GSI. Sigmar has not responded to this letter.

36. Defendants have now positioned a vessel in Mexico with a seismic array different from P/GSI's MASSIVE 3D VSP® equipment. On information and belief, the vessel contains a 30-level array with a design that has never been utilized in a three dimension vertical seismic profile. This equipment cannot be deployed in the manner described in P/GSI's patents. However, using this different equipment, Defendants will attempt to tender the P/GSI services called for under the Pemex Contract.

37. Defendants thus continue to represent, to Pemex that they will provide P/GSI's MASSIVE 3D VSP® services, when in reality they will provide different services. Any vertical seismic profiles performed with Defendants' equipment and processes will not be P/GSI's MASSIVE 3D VSP® services. Accordingly, Defendants' performance of the Pemex Contract will irreparably damage P/GSI's reputation and diminish the value of its service mark.

38. P/GSI currently owns several federal trademark registrations. These federally registered marks include the following registration:

| Mark | Serial No. | Registration No. | Description of Goods or Services | Country |
|---|---|---|---|---|
| MASSIVE 3D VSP | 78087535 | 2,601,269 | Geophysical surveys and related services, namely three-dimensional vertical seismic profiling. | United States |
| P/GSI | 78141595 | 2,104,307 | Geophysical surveys and related services, namely, single-well, cross-well and passive seismic imaging and vertical seismic profiling and reverse vertical seismic profiling | United States |

39. The above trademark registrations are in full force and effect on the Principal Register of the U.S. Patent & Trademark Office. P/GSI has been the owner of the registrations at all relevant times. Certified copies of the above registrations are attached hereto as Exhibit C. Pursuant to 15 U.S.C. §§ 1057(b) and 1115(a), the registration certificates are prima facie evidence of the validity of the registered marks, of P/GSI's ownership of the registered marks, and of P/GSI's exclusive right to use the registered marks in connection with the services specified in the certificates.

40. P/GSI has spent considerable time, money and effort to advertise and promote the P/GSI® and MASSIVE 3D VSP® marks and to develop the underlying technology and processes. As a result of P/GSI's efforts and investments, the P/GSI® and MASSIVE 3D VSP® marks are famous and have substantial value.

41. Defendants are using and/or have used the marks P/GSI® and MASSIVE 3D VSP® by actively representing to Pemex, and possibly to other third parties that they have the exclusive rights to practice P/GSI's patented technology and to deliver P/GSI's MASSIVE 3D VSP® services in Mexico. Defendants have used the terms "P/GSI" and "MASSIVE 3D VSP" in connection with services which, while generally used for similar purposes in the field of seismic imaging, do not produce the volume of data, frequency range, or signal-to-noise ratios that are delivered by the true MASSIVE 3D VSP® technology and services. Such activities by Defendants infringe P/GSI's trademarks and dilute the distinctive value of the P/GSI® and MASSIVE 3D VSP® marks. Such actions also breach Sigmar's and SRI's contractual obligations to P/GSI under the Sigmar NDA and SRI NDA.

42. Defendants' use of the terms "P/GSI" and "MASSIVE 3D VSP" will cause irreparable injury to the P/GSI® and MASSIVE 3D VSP® marks in the form of, inter alia, loss of goodwill, customer confusion, and damage to P/GSI's reputation. If the services and technology delivered to Pemex by Defendants do not meet the high standard associated in the industry with P/GSI's MASSIVE 3D VSP® services, Pemex will undoubtedly believe that P/GSI's services and technology are flawed or of a lesser quality than they truly are.

43. This potential false impression of P/GSI's services will have catastrophic effects for P/GSI. There are approximately twenty companies in the world that are prospective purchasers of P/GSI's MASSIVE 3D VSP® services – companies such as BP, ExxonMobil, Total, Chevron, Shell, Saudi Aramco, and Pemex. Within those companies, there is a very small number of geophysicists who have experience with three-dimensional vertical seismic profile surveys like P/GSI's MASSIVE 3D VSP® surveys. In such a small market, any disappointment on Pemex's part will become known throughout the market very quickly. Defendants' failure to

provide the services contracted for by Pemex will not mar their reputation alone, but will attach to P/GSI's name and reputation as well. For a company such as P/GSI, whose leading product is a service that employs novel, cutting-edge technology, such damage to its name and the reputation of its services could damage the company beyond repair.

**Count 1**
**Unfair Competition Under the Lanham Act**

44. The foregoing paragraphs are incorporated herein.

45. Defendants have used and continue to use in commerce words, terms, names, symbols, devices, and combinations thereof for their products and services that are likely to: (i) cause confusion; (ii) cause mistake and deception as to the affiliation, connection, or association of Defendants with P/GSI; and (iii) cause mistake and deception concerning the nature, characteristics, quality, sponsorship and approval of Defendants' services and commercial activities by P/GSI, all in violation of 15 U.S.C. § 1125(a)(1)(A).

46. Defendants have used, and continue to use in commerce words, terms, names, false or misleading descriptions of fact, and false or misleading representations of fact in commercial advertising and promotion. Specifically, Defendants' use of the P/GSI® and MASSIVE 3D VSP® marks, statements to the effect that they are entitled and competent to provide the services described by those marks, and statements to the effect that Defendants will in fact provide services encompassed by those marks, misrepresent the nature, characteristics, and qualities of Defendants' services and commercial activities in violation of 15 U.S.C. § 1125(a)(1)(B).

47. Defendants' use in commerce of the P/GSI® and MASSIVE 3D VSP® marks has diluted the distinctiveness of the marks, which have become famous in the geophysical

community. Defendants have willfully traded on the distinctiveness of P/GSI's marks to further the pursuit of their own commercial interests, employing what can only be characterized as a "bait and switch" tactic to secure the Pemex Contract. Defendants' conduct violates 15 U.S.C. § 1125(c) and entitles P/GSI to injunctive relief under § 1125(c) and to all other relief available under 15 U.S.C. §§ 1117(a) and 1118.

48. Defendants' unfair competition, false advertising, and willful dilution have damaged P/GSI.

49. Pursuant to the Lanham Act, 15 U.S.C. § 1117, P/GSI requests to recover Defendants' profits, the damages sustained by P/GSI, and the costs of this action.

50. P/GSI further requests that damages be trebled pursuant to the Lanham Act, 15 U.S.C. § 1117.

51. P/GSI further requests that Defendants be required to pay P/GSI's attorney's fees pursuant to the Lanham Act, 15 U.S.C. § 1117.

52. The foregoing conduct by Defendants has caused and will continue to cause, unless enjoined, confusion and deception in the trade and in the consuming public, dilution of P/GSI's distinctive service marks, and serious and irreparable injury to P/GSI. Accordingly, P/GSI requests that the Court issue a temporary restraining order, ex parte and/or after hearing, and that the Court temporarily and permanently enjoin Sigmar, SRI, RSI, and RSM, from the unfair competition and other violations of the Lanham Act complained of herein.

**Count 2**
**<u>Infringement of a Registered Trademark Under the Lanham Act</u>**

53. The foregoing paragraphs are incorporated herein.

54. Defendants have used and continue to use in commerce marks that are the registered trademarks "P/GSI" and "MASSIVE 3D VSP" in connection with the sale, offering for sale, and advertising of services which is likely to cause confusion, to cause mistake, and to deceive, in violation of 15 U.S.C. § 1114(1)(a).

55. Defendants have used the registered trademarks "P/GSI" and "MASSIVE 3D VSP," and continue to do so, in advertisements, correspondence and contracts intended to be used in commerce or in connection with the sale, offering for sale, and advertising of services, which use is likely to cause confusion, to cause mistake, and to deceive, in violation of 15 U.S.C. § 1114(1)(b).

56. Defendants' trademark infringement has damaged P/GSI.

57. Pursuant to the Lanham Act, 15 U.S.C. § 1117, P/GSI requests recovery of Defendants' profits, the damages sustained by P/GSI, and the costs of this action.

58. P/GSI further requests that damages be trebled pursuant to the Lanham Act, 15 U.S.C. § 1117, *et seq*.

59. P/GSI further requests that Defendants be required to pay P/GSI's attorney's fees pursuant to the Lanham Act, 15 U.S.C. § 1117.

60. P/GSI further requests, pursuant to the Lanham Act, 15 U.S.C. § 1117, that the Court order the production and destruction of all correspondence, contracts, documents, and advertisements in Defendants' possession and bearing P/GSI's trademarks.

61. The foregoing conduct by Defendants has caused and will continue to cause, unless enjoined, confusion and deception in the trade and in the consuming public, and serious and irreparable injury to P/GSI. Accordingly, P/GSI requests that the Court issue a temporary restraining order, ex parte and/or after hearing, and that the Court temporarily and permanently

enjoin Defendants from the trademark infringement and other violations of the Lanham Act complained of herein.

**Count 3**
**Misappropriation of Trade Secrets**

62. The foregoing paragraphs are incorporated herein.

63. Sigmar and SRI gained access to P/GSI's trade secrets by entering into their respective NDAs, in which each agreed to maintain the secrecy of those trade secrets. Trade secrets to which Sigmar and SRI gained access include (a) deployment processes, (b) data processing flows and techniques, and (c) equipment specifications and designs.

64. The information disclosed pursuant to the NDAs is proprietary information used by P/GSI in the construction of proprietary borehole seismology equipment and the performance of MASSIVE 3D VSP® services.

65. This information provides P/GSI with a substantial competitive advantage, as it enables P/GSI to produce three-dimensional seismologic surveys of far greater detail and precision than any of its competitors.

66. P/GSI's proprietary information is not generally known in the industry, nor is it discoverable by inspection. Because of its novelty and complexity, P/GSI's technology would be extremely difficult to duplicate.

67. P/GSI scrupulously maintains the secrecy of its proprietary information and technology. The step-by-step instructions and knowledge related to its deployment processes are not known to the general public and are specifically protected in all of its customer contracts. The art underlying P/GSI's data processing flows (as opposed to the scientific information outlined in its proposals) is not known outside the company. Finally, P/GSI's equipment

specifications are protected through non-disclosure agreements with all of its equipment manufacturers.

68. The extraordinary value of P/GSI's trade secrets is evidenced by Pemex's agreement to pay roughly $29.5 million for ten MASSIVE 3D VSP® surveys.

69. Sigmar and SRI disclosed P/GSI's secret equipment specifications and designs in the Pemex Contract itself, as well as in solicitation materials disseminated before the contract was made.

70. If Defendants perform seismic imaging services for Pemex, Sigmar and SRI will disclose additional trade secrets related to data processing flows and techniques in the course of providing technical assistance to Pemex processors.

71. Sigmar and SRI's unauthorized disclosure of P/GSI's trade secrets in breach of their contractual relationships has inflicted an irreparable injury by depriving P/GSI of the value of its proprietary information.

72. Sigmar and SRI's imminent disclosure of additional trade secrets in the performance of the Pemex Contract threatens to inflict additional irreparable injury on P/GSI by further eroding its competitive advantage in providing superior three-dimensional vertical seismic profile services.

**Count 4**
**Unfair Competition Under Texas Law**

73. The foregoing paragraphs are incorporated herein.

74. Defendants' use in commerce of P/GSI's "P/GSI" and "MASSIVE 3D VSP" trademarks constitutes unfair competition, in particular but without limitation, passing off or palming off under Texas law. Defendants' conduct exceeds the bounds of fairness and

commercial morality. In addition, Defendants have used and simulated, for the purpose of deceiving the public, the trademarks of P/GSI, in order to induce the purchasing public to buy its services in the belief that they are those of P/GSI.

75. P/GSI has been damaged by the foregoing conduct of Defendants.

76. The foregoing conduct by Defendants has caused and will continue to cause, unless enjoined, confusion and deception to the trade and the public, and serious and irreparable injury to P/GSI. Accordingly, P/GSI requests that the Court issue a temporary restraining order, ex parte and/or after a hearing, and that the Court temporarily and permanently enjoin Defendants from the unfair competition complained of herein. In addition, P/GSI is entitled to recover its damages from Defendants, as well as punitive damages, pursuant to Texas state law.

**Count 5**
**<u>Dilution Under Texas Law</u>**

77. The foregoing paragraphs are incorporated herein.

78. Defendants have violated Section 16.29, et seq., of the Texas Business & Commerce Code by injuring the business reputation of P/GSI and by diluting the distinctive quality of P/GSI trademarks.

79. P/GSI has been damaged by the foregoing conduct of Defendants.

80. In addition, the foregoing conduct by Defendants has caused and will continue to cause, unless enjoined, confusion and deception to the trade and the public, and serious and irreparable injury to P/GSI. Accordingly, P/GSI requests that the Court issue a temporary restraining order, ex parte and/or after hearing, and that the Court further temporarily and permanently enjoin Defendants from the conduct complained of herein.

**Count 6**
**Breach of Contract**

81. The foregoing paragraphs are incorporated herein.

82. The aforementioned acts by Defendants are in breach of the agreement between Sigmar and P/GSI and SRI and P/GSI. The March 7, 2000 Non-Disclosure Agreement between Sigmar and P/GSI provides that:

> [Sigmar] shall maintain all Proprietary Information in trust and confidence and shall not disclose any Proprietary Information to any third party or use any Proprietary Information for any unauthorized purpose. [Sigmar] may use such Proprietary Information only to the extent required to accomplish the intent of this Agreement. [Sigmar] shall not use Proprietary Information for any purpose or in any manner which would constitute a violation of any laws or regulations, including without limitation the export control laws of the United States. No rights or licenses to trademarks, inventions, copyrights or patents are implied or granted under this Agreement.

March 7, 2000 Non-Disclosure Agreement, attached as Exhibit A. The NDA between SRI and P/GSI contains the following similar language:

> From and after the date of this Agreement and for a period of five (5) years from the date of this disclosure, [SRI] shall hold in trust and confidence for [P/GSI] any and all Confidential Information of [P/GSI] received by it hereunder and shall not, without prior written consent of [P/GSI], disclose Confidential Information of [P/GSI] to anyone . . . "

March 21, 2004 Non-Disclosure Agreement, attached as Exhibit B. On information and belief, Sigmar and SRI have disclosed Proprietary Information, as delivered in their respective NDAs, to Pemex and possibly others in the course of their wrongful acts of trademark infringement and misappropriation of trade secrets.

83. As a result of Sigmar and SRI's actions in breach of such agreements, P/GSI has suffered damages and will continue to suffer damage if Sigmar and SRI are not enjoined from further disclosure of its confidential information. P/GSI is therefore entitled to recover its damages resulting from such breach, injunctive relief prohibiting further breaches by Sigmar and SRI, and P/GSI's attorney's fees pursuant to Tex. Civ. Pract. & Code Ann. §§ 38.001 et. seq. Any and all conditions precedent to a recovery by P/GSI have occurred.

**Prayer for Relief**

WHEREFORE, P/GSI respectfully prays for and requests that this Court grant the following relief to P/GSI:

A. A Temporary Restraining Order, a Preliminary Injunction and, after trial on the merits, a Permanent Injunction, ordering Defendants, their agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them who receive notice of this Court's order, to: (1) Cease directly or indirectly using (a) the terms "P/GSI" or "MASSIVE 3D VSP", (b) any other mark or symbol similar to the "P/GSI" or "MASSIVE 3D VSP" service marks, and (c) any other mark belonging to the P/GSI or any mark similar to marks owned by P/GSI, in any way which is likely to cause confusion or dilution, including, but not

limited to, using the terms/marks in connection with any dealings with Pemex; (2) Prevent any further breach of the contracts between Sigmar and P/GSI and SRI and P/GSI, and to return all trade secret and proprietary information or technology to P/GSI; (3) Deliver up for destruction (after appropriate copying and cataloging for use in this litigation) all contracts, correspondence, advertisements, specifications, presentations, price lists, and all other documents bearing the terms "P/GSI" or "MASSIVE 3D VSP" or any similar term; (4) Send to Pemex a letter containing the following paragraph, accurately translated into Spanish, from Axel Sigmar and addressed to Ing. Arturo Pérez Aldana, Gerente de la Subdirección de la Coordinación Técnica de Exploración, Blvd. Adolfo Ruiz Cortines No. 1202, Fraccionamiento Oropeza, Edificio Pirámide 4to. Piso, C. P. 86030, Villahermosa, Tab., México: "I have been ordered by the United States District Court for the Western District of Texas (the "U.S. District Court") to provide this statement to you. You should be aware that I and my affiliated companies Reservoir Systems, Inc., Sigma Research, Inc. and Reservoir Systems Internacional, S.A. de C.V. (collectively "I"), have been sued by Paulsson Geophysical Services, Inc. ("P/GSI") in the U.S District Court. I have been ordered by the U.S. District Court to cease directly or indirectly using the terms "P/GSI", "MASSIVE 3D VSP," any other mark or symbol similar to the "P/GSI" or "MASSIVE 3D VSP" marks, and any other marks owned by P/GSI in any way which is likely to cause confusion or dilution, including, but not limited to, using the terms/marks in connection with any dealings with Pemex or the government of the United Mexican States. Further, I cannot deliver MASSIVE 3D VSP® services to any party, including Pemex (unless P/GSI provides written approval after the date of the U.S. District Court's order), as I do not have a license to deliver, sell, or use those trademarked services. Additionally, I do not own or otherwise have possession of or access to P/GSI's 80 level arrays that are necessary to deliver the trademarked services, and

those arrays are not available for sale on the open market."; and (5) File with the Court and serve on P/GSI within thirty days of the date of this order a report, in writing and signed under oath by Axel Sigmar, setting forth in detail the manner and form in which Defendants have complied with the injunction.

B. An order for Defendants to deliver up for destruction all correspondence, contracts, documents and advertisements in Defendants' possession and bearing P/GSI's trademarks.

C. An award to P/GSI of its damages arising from Defendants' infringement and dilution of P/GSI's trademarks, an accounting of Defendants' profits from such trademark infringement and dilution, as well as enhancement of P/GSI's damages and P/GSI's attorney's fees under 15 U.S.C. § 1117.

D. An award to P/GSI of its actual damages arising from Defendants' trademark infringement and dilution and unfair competition under Texas state law, as well as punitive damages for such conduct.

E. An award of three times the amount of the damages pursuant to 15 U.S.C. § 1117.

F. An award to P/GSI of its reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

G. An award to P/GSI of its damages from SRI and Sigmar's breach of contract, as well as P/GSI's attorney's fees pursuant to Chapter 38 of the Texas Civil Practice & Remedies Code.

H. An award to P/GSI of its costs of this action and such pre-judgment and post-judgment interest as may be allowed by law.

I. An award to P/GSI of such other relief, legal or equitable, to which P/GSI may be entitled.

Respectfully submitted,

Dated: December 4, 2006

David P. Blanke
Attorney-in-Charge
State Bar No. 02453600
Christopher L. Peele
State Bar No. 24013308
Matthew H. Frederick
State Bar No. 24040931
VINSON & ELKINS L.L.P.
2801 Via Fortuna, Ste. 100
Austin, TX 78746
512.542.8622 (telephone)
512.236.3363 (telecopy)

Joseph J. Mastrogiovanni, Jr.
State Bar No. 13184380
2001 Bryan Street, Suite 1250
Dallas, Texas 75201
214.922.8800 (telephone)
214.922.8801 (telecopy)

ATTORNEYS FOR PLAINTIFF
PAULSSON GEOPHYSICAL
SERVICES, INC.

**Verification**

I, Bjorn N. P. Paulsson, Ph.D., am the Chief Executive Officer of Plaintiff Paulsson Geophysical Services, Inc., and am authorized to execute this Verification on its behalf. I have reviewed the foregoing P/GSI's Verified Original Complaint for Trademark Infringement, Dilution, Unfair Competition, and Breach of Contract. The factual allegations therein are true and correct to my knowledge and belief. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Brea, California as of the 4th day of December, 2006.

Bjorn N. P. Paulsson, Ph.D.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| PAULSSON GEOPHYSICAL SERVICES, INC., | § | |
| | § | |
| | § | CIVIL ACTION NO. __________ |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| AXEL M. SIGMAR; RESERVOIR SYSTEMS, INC.; SIGMA RESEARCH, INC. and RESERVOIR SYSTEMS INTERNACIONAL, S.A. DE C.V., | § | |
| | § | |
| Defendants. | | |

**DECLARATION OF CHRISTOPHER L. PEELE IN SUPPORT OF VERIFIED ORIGINAL COMPLAINT FOR TRADEMARK INFRINGEMENT, DILUTION, UNFAIR COMPETITION, AND BREACH OF CONTRACT**

I, Christopher L. Peele, declare and state as follows:

1. I am an attorney with the firm of Vinson & Elkins L.L.P. ("V&E"), and counsel of record for Plaintiff Paulsson Geophysical Services, Inc. ("P/GSI") in the above captioned case. I have personal knowledge of the facts and matters stated in this declaration and, if called as a witness, would testify to the facts set forth herein.

2. Attached hereto as Exhibit A is a true and correct copy of the March 7, 2000, Mutual Nondisclosure Agreement entered into by P/GSI and Defendant Axel Sigmar.

3. Attached hereto as Exhibit B is a true and correct copy the March 21, 2004, Agreement for Protection of Confidential Information entered into by P/GSI and Defendant Sigma Research, Inc.

4. Attached hereto as Exhibit C is a true and correct certified copy of the registration for the MASSIVE 3D VSP mark and a true and correct copy of the registration for the P/GSI mark.

I declare under penalty of perjury that the foregoing is true and correct.

Executed December 4, 2006.

Christopher L. Peele

Austin 773817v.1

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

(b) County of Residence of First Listed Plaintiff: Orange, California
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
Vinson & Elkins, LLP, 2801 Via Fortuna, Suite 100, Austin, Texas 78746 (512) 542-8400

## DEFENDANTS

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

A06CA952 LY

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☒ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
15 U.S.C. 1114, 1125

Brief description of cause:
Unauthorized use of Plaintiff's registered service mark for three-dimensional vertical seismic profile technology

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 **DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE ______ DOCKET NUMBER ______

DATE: 12/4/06

SIGNATURE OF ATTORNEY OF RECORD: [signature] (Christopher L. Peele, SBN#24013308)

FOR OFFICE USE ONLY

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE 404107 MAG. JUDGE ______

ORIGINAL 404107

AO82
(Rev. 4/90)

**RECEIPT FOR PAYMENT**
**UNITED STATES DISTRICT COURT**
**for the**
**WESTERN DISTRICT OF TEXAS**
at Austin

RECEIVED FROM Vinson + Elkins LLP
The Terrace 7
2801 Via Fortuna Suite 100
Austin TX 78746

| Fund | |
|---|---|
| 6855XX | Deposit Funds |
| 604700 | Registry Funds |
| | General and Special Funds |
| 508800 | Immigration Fees |
| 085000 | Attorney Admission Fees |
| 086900 | Filing Fees |
| 322340 | Sale of Publications |
| 322350 | Copy Fees |
| 322360 | Miscellaneous Fees |
| 143500 | Interest |
| 322380 | Recoveries of Court Costs |
| 322386 | Restitution to U.S. Government |
| 121000 | Conscience Fund |
| 129900 | Gifts |
| 504100 | Crime Victims Fund |
| 613300 | Unclaimed Monies |
| 510000 | Civil Filing Fee (½) |
| 510100 | Registry Fee |

| ACCOUNT | AMOUNT |
|---|---|
| 086900 | 60 00 |
| 510000 | 190 00 |
| 086400 | 100 00 |
| TOTAL | 350.00 |

Case Number or Other Reference
1:06-cv-952

New Case

Paulsson Geophysical Svcs Inc.

v.

Axel M. Sigmar et al.

$Checks and drafts are accepted subject to collection and full credit will only be given when the check or draft has been accepted by the financial institution on which it was drawn. #982453

| DATE | Cash | Check | M.O. | Credit | DEPUTY CLERK: |
|---|---|---|---|---|---|
| 12/4 2006 | | X | | | A French C |

12/5/06